**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DENISE DELTONDO | ) | Civil Action No. 2:22-cv-00350-PLD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Patricia L. Dodge |
| | ) | |
| THE SCHOOL DISTRICT OF PITTSBURGH; | ) | |
| THE BOARD OF PUBLIC EDUCATION OF | ) | |
| THE SCHOOL DISTRICT OF PITTSBURGH; | ) | |
| ANTHONY HAMLET; TIFFANY R. | ) | |
| WASKOWICZ; DAVID MAY-STEIN; DR. | ) | |
| MONICA LAMAR; ANNE RECKHOUSE; | ) | **Electronic Filing** |
| SYLVIA WILSON; KEVIN CARTER; | ) | |
| TERRY KENNEDY; CYNTHIA FALLS; | ) | |
| WILLIAM J. GALLAGHER; PAMELA | ) | |
| HARBIN; SALA UDIN; VERONICA | ) | |
| EDWARDS; DEVON TALIAFERRO | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS WITH PREJUDICE**

## I.        INTRODUCTION

Ms. Denise Deltondo ("Ms. Deltondo" or "Plaintiff") claims that the United States Constitution affords her the unfettered right to say whatever she wants, whenever she wants, and in whatever forum she likes — regardless of her statement's impact. That has never been the case, and it is certainly not the case here. The First Amendment does not protect a public school teacher's right to endorse and promote racist views to the detriment of the public school system and the students it serves.

Ms. Deltondo, a former Kindergarten teacher in the Pittsburgh Public School System, enthusiastically endorsed and shared a social media post with clearly racist undertones to make a point: Black people are privileged because they receive benefits they have neither earned nor deserve:

"What is privilege?...
Privilege is wearing $200 sneakers when you've never had a job.
Privilege is wearing $300 Beats headphones while living on public assistance.
Privilege is having a Smartphone with a Data plan which you receive no bill for.
Privilege is living in public subsidized housing where you don't have a water bill, where rising property taxes and rents and energy costs have absolutely no effect on the amount of food you can put on your table.
Privilege is the ability to go march against, and protest against anything that triggers you, without worrying about calling out of work and the consequences that accompany such behavior.
Privilege is having as many children as you want, regardless of your employment status, and be able to send them off to daycare or school you don't pay for.
Privilege is sending your kids to school early for the before-school programs and breakfast, and then keeping them there for the after-school program . . . paid for by the people who DO HAVE TO DEAL WITH RISING TAXES AND COSTS! . . . you know, us so-called 'PRIVILEGED' the ones who pay while you TAKE TAKE TAKE!"

(The foregoing statements contained in the post are hereinafter referred to, collectively, as the "Offensive Post").  Two days before her scheduled hearing on disciplinary charges related to the Offensive Post, Ms. Deltondo — with and through her counsel —*resigned* her employment rather than defend her actions, indignant that Defendants failed to accede to her $1,000,000 pre-complaint settlement demand.  She has now sued the Pittsburgh Public Schools Defendants (the "PPS Defendants")  for alleged First Amendment (Counts I and II) and Due Process (Count III) violations — in a 58-page "brief" with no fewer than 258 paragraphs[1] — that fails to obfuscate the very clear fact that Ms. Deltondo's claims fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and should be dismissed, with prejudice.  Ms. Deltondo's claims fail for the following reasons:

---

[1]  Throughout the Complaint, the Plaintiff's allegations exhibit inappropriate assertions questioning the PPS Defendants' character and ethics.  This violates the spirit and intent of Rule 8 of the U.S. District Court for the Western District of Pennsylvania's guidance, which provides, "All filings should adhere to the highest standards of civility and professionalism.  *Ad hominem* attacks . . . are inappropriate, as are pleas for sympathy and inflammatory or gratuitous factual references unrelated to the merits."  U.S. District Court for the Western District of Pennsylvania, "Motions Practice and Brief Writing for Attorneys Appearing in the Western District of Pennsylvania," at 5.c.  As a result, the PPS Defendants have filed a Motion to Strike contemporaneously with this Motion to Dismiss.

- Allegations against the Board members and PPS employees in their official and personal capacities fail as a matter of law, and furthermore, the Board members' and PPS employees' conduct in their personal capacity is protected by the doctrine of qualified immunity;

- The due process allegations fail because Ms. Deltondo's resignation waives her due process claims, and in any event, the PPS Defendants afforded Ms. Deltondo a proper *Loudermill* hearing process despite the fact that placement on paid administrative leave does not trigger this requirement;

- The First Amendment speech retaliation claim fails because Ms. Deltondo's Facebook post harboring clearly racist undertones is not protected speech;

- The First Amendment political association claim fails because the Complaint does not allege that political affiliation was a substantial or motivating factor in Ms. Deltondo's discipline;

- Punitive damages are not available in this case as a matter of law.

- For the following reasons, the PPS Defendants respectfully request that this Court grant their motion to dismiss in its entirety, with prejudice.[2]

## II.   FACTUAL ALLEGATIONS

According to the Complaint, Plaintiff was an employee within The School District of Pittsburgh for 27 years, first as a math specialist, then as a vice principal, and then finally as a

---

[2] This Court should dismiss the Complaint with prejudice because any amendment would be futile. Plaintiff cannot cure patent deficiencies where the allegations and claims in her Complaint fail as a matter of law. *Gadling-Cole v. W. Chester Univ.*, 868 F. Supp. 2d 390, 401 (E.D. Pa. 2012) (dismissing plaintiff's complaint with prejudice where "no amendment would be able to alter the nature of the[] complaints . . . which are not protected under the First Amendment"). As such, any attempted amendment would continue to be insufficient and not survive a subsequent motion to dismiss. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (explaining that amendment is futile "if the amended complaint would not survive a motion to dismiss").

kindergarten teacher.  (Compl. ¶ 1 (ECF 1)).  On or around August 9, 2020, Plaintiff shared an article on her Facebook page that disparaged the lifestyles of those who receive government assistance.  (*Id.* ¶ 3).  The Offensive Post was problematic, however, because it contained several racially coded statements about the Black community.  (*Id.* ¶ 15, Ex. 1).

Even more problematic than the Offensive Post's language was Deltondo's enthusiastic reaction to it.  In disseminating the article, Plaintiff commented "awesome read!", thereby voicing her agreement with the post's contents.  (*Id.* ¶ 14, Ex. 1).  The PPS Defendants were made aware of Plaintiff's Offensive Post, so to mitigate against the public backlash to Ms. Deltondo's post, Defendant Dr. Anthony Hamlet, Superintendent of The School District of Pittsburgh, issued a statement on August 10, 2020 stating that Plaintiff's post did not reflect the attitude or beliefs of the District and that the District was investigating the matter to ensure students would continue to receive a bias-free education in its school system.  (*Id.* ¶ 27, Ex. 2).

The Complaint alleges that the next day, August 11, 2020, the PPS Defendants issued Plaintiff a letter providing her notice that she was being placed on paid administrative leave while the District investigated the matter.  (*Id.* ¶ 38, Ex. 3).  The PPS Defendants purportedly informed Plaintiff on September 10, 2020 that a due process hearing for her actions was scheduled for September 17, 2020 – which Plaintiff does not deny participating in and does not deny afforded her an opportunity to explain the intent of the Offensive Post.  (*Id.* ¶¶ 54, 58-59).  During this hearing, the PPS Defendants allegedly found that Plaintiff's lack of contrition raised doubts as to her professional judgment, and Plaintiff refused to acknowledge the Offensive Post's racist nature. (*Id.* Ex. 4).  Afterwards, the Complaint alleges the PPS Defendants sent Plaintiff a formal Statement of Charges on December 22, 2020, which was updated to include charges based on Plaintiff's unapologetic demeanor at the September 17, 2020 hearing; the Statement of Charges

then notified Plaintiff that she was being suspended without pay.  (*Id.* ¶¶ 67, 94, Ex. 4).  Plaintiff's Complaint alleges she objected to the Statement of Charges on January 14, 2021, and the Board of Public Education of the School District of Pittsburgh scheduled another hearing for March 18, 2021.  (*Id.* ¶¶ 85, 87, Ex. 5).  However, this second hearing opportunity never occurred.  Instead, according to Plaintiff's Complaint, Plaintiff notified the PPS Defendants through counsel on March 16, 2021 that she was resigning effective immediately.  (*Id.* ¶ 89, Ex. 6).

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," not just the "mere possibility of misconduct."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Furthermore, the Court need not accept inferences drawn by the plaintiff if they are unsupported by the very facts set forth in the complaint, or are merely legal conclusions masked as factual allegations.  *See Twombly*, 550 U.S. at 555; *California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).  Ultimately, if the complaint fails to provide sufficient details to state a claim upon which can be granted, the Court should dismiss the plaintiff's claims.

## IV.   ARGUMENT

Ms. Deltondo's claims against the PPS Defendants should be dismissed for the reasons set forth below.

a.   **The Court should dismiss the claims against the Board members and PPS employees in their official and personal capacities.**

This Court should dismiss the claims[3] against the individually named Defendants, who represent a collective of PPS Board members and PPS employees, in their official and personal capacities: Dr. Anthony Hamlet, Tiffany R. Waskowicz, David May-Stein, Dr. Monica Lamar, Anne Reckhouse, Sylvia Wilson, Kevin Carter, Terry Kennedy, Cynthia Falls, William J. Gallagher, Pamela Harbin, Sala Udin, Veronica Edwards and Devon Taliaferro.  Claims against individual defendants in their official capacities are equivalent to claims against the school district and school board itself, and because this renders such claims redundant, courts routinely dismiss them as a matter of law.  *See, e.g.*, *Yelland v. Abington Heights Sch. Dist.*, No. CV 3:16-2080, 2017 WL 529837, at *4 (M.D. Pa. Feb. 9, 2017) (dismissing claims against school board members in their official capacities with prejudice because they "merge[d] with [plaintiff's] claims against the [school d]istrict" and were "redundant of the claims plaintiff assert[ed]" against the school district); *Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp. 2d 548, 568 (E.D. Pa. 2008), *aff'd,* 767 F.3d 247 (3d Cir. 2014) ("[C]laims asserted against school board members and school district employees in their official capacities are to be treated as claims against the school district and school board respectively as the entities that employ the individuals.").  Therefore, the claims against the Board members and PPS employees in their official capacities merge with the claims made against the School District of Pittsburgh and the Board of Public Education of the School District of Pittsburgh and should be dismissed.

Similarly, this Court should dismiss the claims against the Board members and PPS employees in their personal capacities.  To establish a claim against an individual in their personal

---

[3]   As explained more fully in Section IV.f below, this Court should also dismiss the punitive damages against the PPS Defendants for similar reasons.

capacity, Ms. Deltondo must establish with sufficient particularity that each individual defendant was acting under color of law and violated her rights.  *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)).  Nowhere in Ms. Deltondo's Complaint does she allege that the Board members and PPS employees were acting on behalf of the Board of Education or had such decision-making powers delegated to them.  *See LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 126 (3d Cir. 2003) (dismissing claim against defendant in his individual capacity because as a member of the board of commissioners, he could neither speak for the board nor was delegated to do so).  Further, nowhere in Ms. Deltondo's Complaint does she allege that any of the Board members or PPS employees have final policymaking authority.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to . . . liability.").

Finally, each Board member and PPS employee is mentioned only sparingly in the Complaint, and they are generally described with repetitive, boilerplate language as to their supposed participation and acquiescence in the "violation."  In fact, the Complaint does not even allege specific conduct by any of the individuals except Dr. Anthony Hamlet and Tiffany Waskowicz, other than conclusory allegations in the "Parties" section of the Complaint.  (Compl. ¶¶ 102-115).  The extent of the allegations against Defendant Dr. Hamlet include that he "blasted" Plaintiff via a social media post.  (*Id*. ¶ 27).  The post in question, copied verbatim in the Complaint, did not even identify Plaintiff by name and takes the form of a standard press release.  As to Defendant Waskowicz, Plaintiff alleges that she "repeatedly and viciously accused Plaintiff of being racist and asked Plaintiff to explain her ideological motivations for the post."  (*Id.* ¶ 58). However, Ms. Deltondo must allege the Board members' and PPS employees' personal involvement in these alleged wrongs with particularity.  *See Rode v. Dellarciprete*, 845 F.2d 1195,

1207 (3r Cir. 1988) ("Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity.")  Accordingly, the Board members and PPS employees were neither acting under color of law nor in violation of Ms. Deltondo's rights.

> **b.**  **The Court should also dismiss the claims against the Board members and PPS employees in their personal capacities because they are entitled to qualified immunity.**

Furthermore, the Board members and PPS employees are entitled to qualified immunity in their personal capacities because they reasonably exercised their discretionary functions. Qualified immunity protects governmental employees from "liability for civil damages insofar as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald¸* 457 U.S. 800, 181 (1982).  A statutory or constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Here, none of the rights alleged in the Complaint are "clearly established," and therefore qualified immunity should shield all Board members and PPS employees from liability in their personal capacities.

The contours of the First Amendment rights that Plaintiff alleges were violated are not so clearly established in the Third Circuit so as to be beyond debate.  In fact, Third Circuit precedent holds that school officials are well within their right to discipline public school employees for speech that disrupts school operations.  *See, e.g.*, *Munroe v. C. Bucks Sch. Dist.*, 805 F.3d 454 (3d Cir. 2015) (holding that school officials did not violate a teacher's First Amendment rights by dismissing her after her personal blog created disruption in the school's operations).  Here, the Board of Education found after Plaintiff's December 16, 2020 hearing that her Offensive Post impacted the school district's "ability to efficiently carry out its responsibilities as a public school district" and "interfere[d] with [Plaintiff's] ability to maintain relationships with [her] students,

colleagues, supervisors, and members of the public, which are an essential component of being a teacher…" (Compl. ¶¶ 6-7, Ex. 4).   Therefore, it was reasonable for the Board members and PPS employees to believe they could lawfully discipline Ms. Deltondo for engaging in similarly disruptive and offensive speech as in *Munroe*.

Similarly, the Fourteenth Amendment rights Plaintiff claims were violated are also not clearly established under Third Circuit precedent.  For instance, the Third Circuit has held that a public employee is not entitled to a pre-suspension *Loudermill* hearing when he or she is suspended with pay.  *See, e.g., Jerrytone v. Musto*, 167 Fed. Appx. 295, 301 (3d Cir. 2006); *Cipriani*, *v. Lycoming County Housing Authority*, 177 F. Supp. 2d 303, 319 (M.D. Pa. 2001).  As such, the Board members and PPS employees acted reasonably in suspending Plaintiff with pay prior to her first due process hearing.  This reasonable exercise of a discretionary government function is exactly the type of conduct qualified immunity is intended to protect; otherwise, the potential for liability every time a government employee takes action would lead to "distraction from official duties . . . and deterrence of able people from public service."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (quoting *Harlow*, 437 U.S. at 816).  As such, all claims against the Board members and PPS employees in their personal capacities should be dismissed.

    c.    **The Court should dismiss Ms. Deltondo's due process claim.**

        i.    ***The Court should dismiss Ms. Deltondo's procedural due process claim because she voluntarily resigned.***

If the Court does not dismiss Ms. Deltondo's Complaint based on procedural grounds, it should nevertheless dismiss the Complaint because each substantive cause of action fails to allege sufficient facts to state a claim upon which relief can be granted.  For instance, to prevail on a procedural due process claim, a litigant must show (1) that the state deprived her of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of

law. *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 285 (3d Cir. 2008).  As the U.S. Supreme Court

has established, "The essential requirements of due process . . . are notice and an opportunity to

respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

      While the Third Circuit precedent establishes the minimum requirement that a public

employee receive notice and an opportunity to respond through a *Loudermill* hearing process,

numerous courts have determined that when an employee resigns, they are presumed to do so

freely, and the onus is on the employee to produce evidence to establish that the resignation was

"involuntarily procured." *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227-228 (3d Cir. 1999).  As

the Third Circuit has explained, there are only two circumstances in which a resignation will be

deemed involuntary: (1) when the employer forces the resignation by coercion or duress; or (2)

when the employer obtains the resignation by deceiving or misrepresenting a material fact to the

employee.  *Id*. at 228.  Further, the Third Circuit has identified a non-exhaustive list of factors to

evaluate a constructive discharge claim due to coercion or duress: (1) whether the employee was

given some alternative to resignation; (2) whether the employee understood the nature of the choice

she was given; (3) whether the employee was given a reasonable time in which to choose; (4)

whether the employee was permitted to select the effective date of the resignation; and (5) whether

the employee had the advice of counsel.  *See Judge v. Shikellamy Sch. Dist.*, 905 F.3d 122, 125

(3d Cir. 2018).

      Here, Ms. Deltondo notified the PPS Board of Education through her counsel, Francis

Malofiy, that she was "effective immediately, no longer an employee of the Pittsburgh School

District" ("Resignation Notice") — just two days before her scheduled PPS Board hearing.

(Compl. Ex. 6).  Rather than attend the hearing, she intentionally chose to resign — with and

through the advice of counsel — because she was upset that after two months of waiting, she might

have to testify in defense of her actions, rather than obtain an immediate $1,000,000 payout upon an aggressive threat of protracted litigation. (*Id.* Exs. 5-6). She made a choice – and that choice was to resign. Period.

Further, even though she may have understood her employment was in jeopardy, the possibility of eventual termination, without more, cannot render a resignation involuntary because "otherwise, a due process violation would result whenever a public employee resigned rather than asserting his or her (usually extensive) procedural rights." *Rosfeld v. Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*, No. 2:20-CV-225, 2020 WL 4584356, at *5–6 (W.D. Pa. Aug. 10, 2020). Moreover, courts have held that an alleged threat of termination is insufficient to overturn the presumption that an employee's resignation is voluntary. *Rosfeld v. Univ. of Pittsburgh,* No. 20-cv-225*, 2020 WL 4584356, at 5 (M.D. Pa. Aug. 5, 2020) ("[T]he rare, legally viable claims of coerced resignation have typically involved threats beyond termination, such as criminal prosecution or physical harm."); *DeWalt v. Barger*, 490 F. Supp. 1262, 1277 (M.D. Pa. 1980) (finding that plaintiff's resignation, although given while plaintiff was under considerable stress, "was not coerced by defendant so as to make the resignation a 'constructive discharge' in violation of plaintiff's right to due process").[4]

By resigning before a scheduled Board hearing on March 18, 2021, Ms. Deltondo waived her opportunity to respond to the charges against her and be heard. *Psota v. New Hanover Twp.*, No. CV 20-5004, 2021 WL 6136930, at *14 (E.D. Pa. Dec. 29, 2021) ("Plaintiff ultimately waived his chance to present exculpatory evidence in a second forum by choice by his resignation.");

---

[4]   Courts in other circuits have echoed this sentiment as well. *See, e.g.*, *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) ("Resignations obtained in cases where an employee is faced with such unpleasant alternatives are nevertheless voluntary because the fact remains that plaintiff had a choice. [She] could stand pat and fight."); *Stone v. Univ. of Maryland Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988) ("[T]he mere fact that the choice is between comparably unpleasant alternatives—e.g., resignation or facing disciplinary charges—does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary.").

*Garzella v. Borough of Dunmore*, 280 Fed.Appx. 169, 173 (3d Cir. 2008) ("A state cannot be held to have violated due process when a plaintiff has refused to utilize procedural protections that were available."). Ms. Deltondo had weeks to contemplate her resignation decision, and indeed, she chose her resignation date for March 16, 2021, two days before a scheduled Board hearing. (Compl. ¶¶ 88-89, Ex. 6). For all the foregoing reasons, this Court should dismiss Ms. Deltondo's due process claim.

ii. ***The Court should dismiss Ms. Deltondo's procedural due process claim because her placement on paid administrative leave does not trigger the requirements of a* Loudermill *hearing, and alternatively, the hearing Ms. Deltondo was afforded was sufficient under* Loudermill*.***

Pre-deprivation due process is satisfied if, prior to the deprivation, a public employee is given: (1) written or oral notice of the charges; (2) an adequate explanation of the evidence; and (3) an adequate opportunity to present her side of the story. *Wagner v. Tuscarora Sch. Dist.*, No. CIV.A. 1:04-CV-1133, 2006 WL 167731, at *8 (M.D. Pa. Jan. 20, 2006), *aff'd*, 225 F. App'x 68 (3d Cir. 2007). As the U.S. Supreme Court explained in *Loudermill*, "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U.S. at 546. Furthermore, advance notice is not required, so long as the timing of the notice does not prevent the employee from presenting her side of the story. *Wagner v. Tuscarora Sch. Dist.*, 2006 WL 167731, at *8. *Id.* at 244-45.

Courts draw a clear distinction between paid administrative leave and unpaid administrative leave when analyzing whether an employee is due a *Loudermill* hearing. Notably, courts have found that a *Loudermill* hearing is not required when an employee is suspended with pay because it does not violate the employee's property interest in continued employment. *See, e.g.*, *Cipriani*, 177 F. Supp. 2d at 319 ("[A] governmental employee who is suspended with pay is not entitled to a pre-suspension hearing."); *Jerrytone*, 167 Fed. Appx. At 301 ("Given the minimal

property interest involved, [teacher's] due process rights were not violated when he was placed on paid suspension without a prior hearing after allegations of serious misconduct."). In fact, some courts have determined that suspension with pay is an entirely appropriate solution to removing potentially disruptive employees. *See Gilbert v. Homar*, 520 U.S. 924, 929 (1997) (observing that in situations "where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay"); *Suniaga v. Downingtown Area School District*, 504 F.Supp.3d 430, 448-49 (E.D. Pa. 2020) ("A school district has a strong interest in protecting students and maintaining public confidence in the school system. Therefore, DASD was entitled to temporarily suspend [teacher], provided that it was for a reasonably short period of time and with pay."). This is all the more true when the employer provides its employee with a subsequent *Loudermill* hearing as they did here. *See, e.g.*, *Cormier v. Crestwood School District*, 2020 WL 6263027, at *6 (M.D. Pa. 2020) (dismissing with prejudice plaintiff's due process claim where he was placed on a paid suspension and noting that "despite not being strictly required to afford [plaintiff] a pre-deprivation hearing, the School District did so via the November 1, 2017 *Loudermill* hearing"); *Kinavey v. D'Allesandro*, No. CIV.A. 10-364, 2010 WL 3896491, at *4 (W.D. Pa. Sept. 29, 2010) (granting defendant's motion to dismiss against plaintiff who was suspended with pay on September 22, 2009 and noting that plaintiff later received her *Loudermill* hearing on November 17, 2009).

Here, Ms. Deltondo was not deprived of her due process rights because she was placed on paid administrative leave on August 11, 2020, which does not trigger the requirements under *Loudermill*. Nevertheless, the PPS Defendants informed Ms. Deltondo of her opportunity for a hearing on September 10, 2020 and provided her with that hearing on September 17, 2020, notwithstanding Ms. Deltondo's unfounded assertion that this hearing was a "sham due process

hearing." (Compl. ¶ 121); *see Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431, 449 (M.D. Pa. 2009) (finding that plaintiff was afforded adequate due process hearing even though he believed the hearing was biased against him).  The PPS Defendants then extended Ms. Deltondo a second opportunity for a due process hearing via a scheduled Board meeting for March 18, 2020 and provided her with an even more detailed Statement of Charges on December 22, 2020 – well in advance of that hearing.  Therefore, even if this Court does not find that Ms. Deltondo's voluntary resignation requires dismissal of her due process claims, it should find that Ms. Deltondo's placement on paid administrative leave and subsequent opportunities for a hearing did not violate *Loudermill* and grant the PPS Defendants' motion to dismiss accordingly.[5]

> ### iii. The Court should dismiss Ms. Deltondo's stigma-plus and reputation-plus due process claims because Ms. Deltondo cannot show an accompanying infringement of a protected right or interest.

A stigma-plus or reputation-plus claim[6] is only actionable "if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Township of Falls,* 890 F.2d 611, 619 (3d Cir.1989) (citing *Paul v. Davis,* 424 U.S. 693, 701-702 (1976)).  Thus, a plaintiff must show a stigma to her reputation plus some accompanying infringement of a protected right or interest.  *See Paul,* 424 U.S. at 701 (finding

---

[5]   Related to this, Ms. Deltondo's request for declaratory and equitable relief in the form of a name-clearing hearing is without merit and should be dismissed.  The PPS Defendants provided Ms. Deltondo with an opportunity to clear her name on at least two occasions, and the PPS Defendants are not required to provide a separate proceeding solely for this purpose.  *See, e.g.*, *Liotta v. Borough of Springdale*, 985 F.2d 119 (3d Cir.1993) (finding that borough council's hearing provided plaintiff with an opportunity for name-clearing and that was all "the process he was due"); *Demko v. Luzerne County Cmty. Coll.*, 113 F.Supp.2d 722, 734 (M.D. Pa. 2000) (finding that a pre-deprivation hearing that satisfies the requirement of *Loudermill* is sufficient for purposes of a name-clearing hearing); *Wagner v. Tuscarora Sch. Dist.*, No. CIV.A. 1:04-CV-1133, 2006 WL 167731, at *9 (M.D. Pa. Jan. 20, 2006), *aff'd,* 225 F. App'x 68 (3d Cir. 2007) (finding that plaintiff was not entitled to a separate name-clearing hearing because the defendants provided the plaintiff with sufficient notice of charges and opportunity to respond).  Any additional and separate name-clearing hearing Plaintiff seeks would be redundant of the opportunities the PPS Defendants have already provided.

[6]   Although Plaintiff's Complaint erroneously identifies them as separate claims, courts have referred to this cause of action alternatively as a "stigma plus" or "reputation plus" claim.  *Graham v. City of Philadelphia*, 402 F.3d 139, 142 n. 2 (3d Cir.2005).

that although not every defamation by a public official will constitute a deprivation of liberty subject to constitutional protection, stigma to reputation, together with an impact on "tangible interests, such as employment" may require due process protection).

Here, Ms. Deltondo's allegations fail to provide sufficient detail that at the time of the PPS Defendants' conduct they were accompanied by an infringement on a protected right or interest. Moreover, Ms. Deltondo's allegations do not sufficiently allege facts to show that the PPS Defendants' conduct was made with the intent to harm Ms. Deltondo's reputation, other than asserting conclusory language that that the PPS Defendants' conduct was "defaming and stigmatizing." (Compl. ¶ 38). However, injury to reputation alone is not a liberty interest protected under the Fourteenth Amendment. *Wagner v. Tuscarora Sch. Dist.*, No. CIV.A. 1:04-CV-1133, 2006 WL 167731, at *10 (M.D. Pa. Jan. 20, 2006), *aff'd,* 225 F. Appx. 68 (3d Cir. 2007). Further, Ms. Deltondo's allegations do not specify facts alleging she has suffered a tangible loss, other than asserting "Defendants have . . . made it largely impossible to pursue her chosen career" and "She has suffered severe damage as a result, including loss of employment, loss of wages, future employment, mental and emotional anguish, and loss of reputation." (Compl. ¶¶ 237-38); *see Caristo v. Blairsville-Saltsburg Sch. Dist.,* 370 F. Supp. 3d 554, 567–68 (W.D. Pa. 2019) (dismissing school superintendent's stigma-plus claim because "a claim of defamation . . . was not a federal claim" and "statements that [p]laintiff has suffered lost future employment opportunities, lost earnings, and suffered a permanent impairment of her ability to earn are insufficient") (citing *Paul,* 424 U.S. at 701). Therefore, this Court should dismiss Ms. Deltondo's stigma-plus and reputation-plus claims.

**d.     The Court should dismiss Ms. Deltondo's First Amendment speech retaliation claim because Ms. Deltondo's Facebook post reflecting racial stereotypes was not protected speech.**[7]

To state a claim of First Amendment retaliation, a plaintiff must establish that their alleged speech/conduct was constitutionally protected. *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). A public employee's speech is protected only if "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made." *Young v. Township of Irvington*, 629 F. App'x 352, 357 (3d Cir. 2015). As the U.S. Supreme Court has explained, a court analyzing whether speech is protected must "balance . . . the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968). Further, speech involves a "matter of public concern" when the content, form, and context of a given statement, can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Social media posts that are steeped in racist rhetoric clearly do not serve or add to any public debate, though, and where a public employee's speech reflects racist ideologies, it is not protected by the First Amendment. Although Ms. Deltondo's Complaint alleges she intended to address the "growth of the welfare state," (Compl. ¶ 4),[8] intent of the speaker is not dispositive;

---

[7]    Again, Ms. Deltondo voluntarily resigned her position before a scheduled hearing related to her Offensive Post. No disciplinary action in the form of termination or otherwise was issued. Her injuries are self-caused.

[8]    While the Complaint states that "the speech in question was in fact on matters of public concern" (Compl. ¶ 138), the assertion is contrary to the law. Courts in the Third Circuit have determined that racially insensitive speech generally does not relate to a matter of public concern. For instance, in *Fenico v. City of Philadelphia*, No. CV 20-3336, 2022 WL 226069 (E.D. Pa. Jan. 26, 2022), while the defendants assumed the plaintiffs' racist social media remarks involved matters of public, the court noted in dicta that it was "not convinced that all of the Plaintiffs' posts involved matters of public concern" because the "post[s] clearly did not serve or add to any public

instead, the impact of the speech governs.  *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377,

399–400 (1992) (*White, J.*, concurring) (opining that limitations on speech like obscenity, libel,

and panic-inducing statements are content-based; "the First Amendment does not apply to them

because their expressive content is worthless or of *de minimis* value to society" but instead because

"the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake,

that no process of case-by-case adjudication is required").

In particular, courts have found that social media posts are not protected by the First

Amendment where the posts' derogatory and racially charged content causes disruption that

outweighs an interest in free speech.  *See, e.g., Hernandez v. City of Phoenix*, 482 F. Supp. 3d 902

(D. Ariz. 2020) (finding that plaintiff's "crass attempts at humor" directed at people of Muslim

faith was not protected speech; plaintiff's purported explanation that he was commenting on "the

nature of media coverage, cultural assimilation, and spending priorities of the federal government"

was contrary to the true content of his Facebook posts); *Munroe*, 805 F.3d at 454 (finding that

even if terminated teacher's blog posts, in which she made derogatory comments about her

students, and subsequent statements to media implicated a matter of public concern, school

district's interest in promoting efficiency and avoiding workplace disruption outweighed teacher's

and public's interest in the speech, and thus the speech was not entitled to First Amendment

protection).  Indeed, in one case within the Third Circuit, this specifically involved content with

racially coded stereotypes such as Ms. Deltondo's Offensive Post.  In *Fenico v. City of

Philadelphia*, No. CV 20-3336, 2022 WL 226069 (E.D. Pa. Jan. 26, 2022), the plaintiffs[9] were a

---

debate as [they were] steeped in racist rhetoric towards African Americans, the prison system, and single mothers with multiple children."  *Id.* at *11 n.20.

[9]   Like Ms. Deltondo argues in similar fashion in her Complaint, each of the Fenico plaintiffs had "long served . . . the great city of Philadelphia.  Each ha[d] won multiple awards documenting their service and commitment to the community, their heroics, and their skill in their field.  Moreover, many of the Plaintiffs have never been disciplined by the PPD prior to their Facebook posts becoming public."  *Id.* at *3.  This lack of a disciplinary

group of current and former members of the Philadelphia Police Department ("the PPD") who were reprimanded after a watchdog group published the plaintiffs' posts. The plaintiffs' posts spanned a multitude of topics such as Black Lives Matter protestors and their treatment, the use of violence against child molesters, Islam and its followers, refugees, police brutality, and much more. The court in *Fenico* was more than aware that even though some of the posts did not make directly racially insensitive remarks, they nevertheless reflected racial dog whistles. For instance, in some of the posts, the plaintiffs commented that apprehended Black Lives Matter protestors—often black men—"should be dead" or "should have more lumps on his head." In other Facebook posts, officers advocated shooting looters on sight and using cars to run over protestors. *Id.* at *1 n.3. Another post showed the image of a car decal with a male figure behind bars, while a mother stood next to five infant babies and a dog. Yet another post was of a meme that pictured a Black passenger on a bus wearing a diaper with the caption "Thuggies."

The court explained, "Th[ese] post[s] clearly did not serve or add to any public debate as it is steeped in racist rhetoric towards African Americans, the prison system, and single mothers with multiple children." *Id.* at *11 n.20. Ultimately, the court in *Fenico* found that the plaintiffs failed to establish a First Amendment retaliation claim and dismissed their case. Specifically, the plaintiffs failed to show that their right to free speech outweighed the government's interest in regulating that speech. In doing so, the court explained at length:

> The government need not show the existence of actual disruption if it establishes that disruption is likely to occur because of the speech. . . . The police department has an interest in: (1) maintaining and preserving the public's trust and promoting a diverse workforce; (2) efficient prosecution; and (3) maintaining orderly internal operations and avoiding potential disruptiveness. . . . [T]he Facebook posts were externally and internally disruptive to police operations as it perpetuated the public's fears and concerns that the police department could not serve the community in an unbiased or professional manner. . . . [A]s members of the

record did not affect the court's analysis in *Fenico*, however, and it should not affect the Court's decision here, either.

Philadelphia Police Department, employees are embodiments of its mission. It is, thus essential, that each member accepts his or her role as an ambassador of the department. In doing so, each member must strive to maintain public trust and confidence, not only in his or her professional capacity, but also in his or her personal and on-line activities. . . . [plaintiffs] must continuously deal with individuals from multiple walks of life, regardless of their race, sex, creed, or religion.

*Id.* at *10-13.

Here, Ms. Deltondo's Offensive Post caused disruption for the PPS Defendants. (Compl. Exs. 2-4). Moreover, the threat of continued, future disruption was likely once the school year began. *See Munroe*, 805 F.3d at 477–78. As a teacher, it is critical that Ms. Deltondo remain free of bias and prejudice, and Ms. Deltondo's Offensive Post disrupted the PPS Defendants' ability to achieve its mission of providing an inclusive learning environment for children. (Compl. Exs. 2-4). Moreover, it is imperative for teachers such as Ms. Deltondo to promote racial harmony amongst students. Ms. Deltondo's support of the Offensive Post reflecting clearly racist undertones is contrary to the PPS Defendants' mission and disruptive to operations. Ms. Deltondo's Offensive Post is not protected by the First Amendment. Accordingly, the Court should dismiss Ms. Deltondo's First Amendment retaliation claim.

> e. **The Court should dismiss Ms. Deltondo's First Amendment political association claim because Ms. Deltondo's Complaint does not allege sufficient facts that political affiliation was a substantial or motivating factor in her discipline.**

The Court should dismiss Ms. Deltondo's First Amendment political association claim as well. The Third Circuit has established a three-part test to analyze whether a public employee has a viable political discrimination case. *See Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663-64 (3d Cir. 2002). First, the plaintiff must establish that he or she worked "for a public agency that does not require political affiliation." *Id.* at 663. Next, the plaintiff must prove that he or she "maintained an affiliation with a political party." *Id.* at 663-64. Finally, the plaintiff must show

that his or her "political affiliation was a substantial or motivating factor in the adverse employment decision."  *Id*. at 664.

Here, Ms. Deltondo's political affiliation claim is factually deficient.  As an initial matter, the clearly racist undertones in the Offensive Post, expressly or implicitly, are not affiliated with any political party as the plain language of the Offensive Post makes clear — nor would any political party embrace the morally repugnant views expressed therein, which voices widespread condemnation against the Black community using racist dog whistles and tropes.  While the Complaint asserts that Ms. Deltondo supported the 2020 Presidential Campaign of President Donald J. Trump (Compl. ¶ 209), it contains insufficient facts alleging her political affiliation — resorting instead to vitriolic, unsubstantiated conclusions that the PPS Defendants were motivated to punish Ms. Deltondo based on their left-wing, liberal associations without any facts in support whatsoever.  (*Id.*. ¶¶ 118, 211).  Further, the Complaint also fails to allege that any other school employees were disciplined because of their affiliation with conservative or Republican ideologies, further indicating that her claims are less than plausible.  Accordingly, Ms. Deltondo's political affiliation claim fails.

**f.**    **The Court should dismiss Ms. Deltondo's requests for punitive damages.**[10]

As an initial matter, the request for all damages against the Board members and PPS employees fail for the reasons set forth above.  Notwithstanding the foregoing, the law is clear that punitive damages may not stand against a municipality or its employees in their official capacity. *Ruiz v. Philadelphia Hous. Auth.*, No. CIV. A. 96-7853, 1998 WL 159038 (E.D. Pa. Mar. 17, 1998)

---

[10]    Further, there are no factual allegations to support punitive damages against the Board members and PPS employees in their personal capacities.  There are simply insufficient facts alleged regarding what, if anything, the foregoing defendants did to give rise to liability on the claims alleged, let alone a claim for punitive damages. *Ruiz v. Philadelphia Hous. Auth.*, No. CIV. A. 96-7853, 1998 WL 159038 (E.D. Pa. Mar. 17, 1998) (requiring allegations of "reckless, callous, intentional or motivated by evil motive" in support of punitive damages) (citing *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir.1989)).

(citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259 (1981)).  Here, Plaintiff seeks punitive damages against the School District of Pittsburgh, the Board of Education of the School District of Pittsburgh, and numerous employees and board members in their personal and official capacities.  The punitive damages claims against the municipal entities and individuals in their official capacities must fail as a matter of law and should be dismissed.

## V.      CONCLUSION

For the reasons stated above, this Court should grant the PPS Defendants' motion to dismiss with prejudice.

Respectfully submitted,

*/s/ Jennifer S. Park*

Jennifer S. Park
jennifer.park@dentons.com
Pa. ID 87733
Myah A. Cummings
myah.cummings@dentons.com
Pa. ID 326732
Samantha L. Cook
samantha.cook@dentons.com
Pa. ID 330296

**DENTONS COHEN & GRIGSBY P.C.**
625 Liberty Avenue
Pittsburgh, PA  15222-3152
412-297-4900 / 412-209-1975 (Fax)

*/s/ Ira Weiss*

Ira Weiss
iweiss@wbklegal.com
Pa. ID 17408

**WEISS BURKARDT KRAMER, LLC**
445 Fort Pitt Boulevard, Suite 503
Pittsburgh, PA 15219
412-391-9890 / 412-391-9685 (Fax)

Dated: April 29, 2022                          *Counsel for Defendants*

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing Defendants'

Brief in Support of Motion to Dismiss with Prejudice was filed electronically on April 29, 2022.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


/s/ Jennifer S. Park
Jennifer S. Park