## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE DELTONDO, | ) |
| | ) |
| Plaintiff, | ) 2:22-cv-350 |
| | ) |
| vs. | ) Judge William S. Stickman |
| | ) Magistrate Judge Patricia L. Dodge |
| THE SCHOOL DISTRICT OF PITTSBURGH, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Plaintiff Denise Deltondo alleges that after she re-posted a social media post on Facebook (the "Privilege Post") on August 9, 2020, various parties associated with the Pittsburgh School District unlawfully retaliated against her, first by suspending her and later by terminating her from employment as a teacher. Her remaining cause of action is a First Amendment retaliation claim against the School District of Pittsburgh, the Board of Public Education, former Superintendent Anthony Hamlet and Director of Employee Relations Tiffany Waskowicz.

Currently pending before the Court is Defendants' Second Motion for Sanctions (ECF No. 193). For the reasons that follow, their motion will be granted in part and denied in part.

**I. Relevant Procedural History**

On September 27, 2024, Defendants filed a Motion Seeking Dismissal of Lawsuit (ECF No. 160). In it, they argued that Plaintiff's failure to preserve key evidence and her willful violation of the Court's discovery orders and other discovery misconduct warranted the dismissal of this action with prejudice.

A Memorandum Order was issued on November 22, 2024 (ECF No. 176) that denied Defendants' request for dismissal but left open the opportunity to seek further relief. Plaintiff's

objections to the Memorandum Order (ECF No. 178) were overruled by Judge Stickman (ECF No. 183).

Defendants subsequently filed a Second Motion for Sanctions (ECF No. 193), which has been fully briefed (ECF Nos. 194, 205, 209, 212). Oral argument on the motion was also held.

## II.    Relevant Background

### A.  The First Motion for Sanctions

There have been a number of discovery disputes in his action. By way of background and of some relevance here is the substance of Defendants' first Motion for Sanctions Seeking Dismissal of Lawsuit (ECF No. 160). Defendants' motion sought dismissal of Plaintiff's action with prejudice and an award of attorneys' fees based upon spoliation and other discovery misconduct.

In its decision, this Court found that Defendants were not entitled to relief under Rule 37(e)(2) because it was unable to conclude that Plaintiff acted in bad faith with the intent to destroy ESI for the purpose of depriving Defendants of its use in this litigation. While Plaintiff failed to preserve ESI, the Court concluded that dismissal, the relief sought by Defendants, was not warranted. At the same time, the Court permitted Defendants to seek other relief to cure any prejudice caused by Plaintiff's destruction of ESI.

In their previous motion for sanctions, Defendants also referenced a number of other discovery violations by Plaintiff. In addition to Plaintiff's failure to comply with Court orders regarding the production of ESI, they noted other instances in which Plaintiff either failed to comply with a court order or failed to do so by the deadline set by the Court. Again, while finding that dismissal was not warranted, the Court indicated that Defendants could seek appropriate sanctions for Plaintiff's failure to comply with the Court's orders.

Defendants' Second Motion for Sanctions followed.

### B. The Second Motion for Sanctions

Defendants' pending motion is brought pursuant to 28 U.S.C. § 636(e)(6)(B), 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 37(b)(2)(A) and (C) and 37(e)(1). They request that the Court: "(1) direct designated facts to be taken as established; (2) award attorneys' fees, costs and expenses to PPS Defendants; and (3) certify facts to the Court requiring that Ms. Deltondo and her counsel appear before the Court to show cause why they should not be fined for contempt." (ECF No. 194 at 13.)[1]

In support of their request for sanctions, Defendants cite the deletion of the Privilege Post and associated information on Facebook as well as the following violations of Court orders: (1) failing to provide a declaration regarding Deltondo's 2019 and 2021 W-2s until July 2024 after the second motion to compel was granted; (2) failing to provide an amended privilege log removing all reference to an erroneous "union representative privilege"; (3) repeatedly harassing them through correspondence and during the deposition of the District's IT designee about Deltondo's RISE evaluations; (4) asserting an unfounded attorney-client relationship with Amy McLaughlin, Deltondo's therapist; and (5) providing a "largely deficient" production on September 18, 2024 that did not comply with the Court's orders.

Defendants assert that during discovery, they made multiple requests that Plaintiff produce ESI and other information, including copies of the Facebook and Instagram versions of the

---

[1] Defendants' proposed order asks this Court to direct that the designated facts in subparts (a) through (f) of the order be taken as established. The proposed order also seeks a certification of certain facts to the District Court that would require Plaintiff and her counsel show cause why Plaintiff should not be fined for civil contempt. At oral argument, Defendants clarified that the facts to be certified to Judge Stickman are those in subparts (a)(i) and (iii) of the proposed order. The remainder of the subparts are designated facts that Defendants propose would be read to the jury.

3

Privilege Post, comments and reactions to these posts, and a list of her Facebook friends, Instagram followers and groups she belonged to in August 2020. Multiple orders issued by the Court, including orders issued on January 18, 2024 and August 19, 2024, compelled production of this information. Defendants note Plaintiff's repeated pattern of disregarding orders of this Court. Among other things, the January 18, 2024 order (ECF No. 98) directed Plaintiff to respond to Defendants' RFP No. 25 by producing any ESI in her possession that had not already been produced with respect to all requests in which Plaintiff had responded that she was producing documentation.

In addition, the August 19, 2024 order (ECF No. 145) noted in part that:

> Plaintiff has failed to either comply with an order of court issued months ago, to seek modification of this order, or to confer with counsel about any alternative proposal that may have provided the requested information without undue burden to either party. Her failure to do so renders untimely any otherwise appropriate objections she may have had. Therefore, Plaintiff will be ordered to produce the documents requested in RFP No. 25. . .

Finally, on September 18, 2024, Plaintiff produced what Defendants characterize as a "largely useless social media dump of screenshots. . . from a self-selected eight-month period of time…"[2] (ECF No. 194 at 2.) They also note that the production of screenshots is insufficient both legally and factually. (*Id.* at 5 n.6.)

According to Defendants, Plaintiff later admitted on September 27, 2024, the last day of fact discovery, that in August 2020, she deleted the Privilege Post from her Facebook account and cannot identify her Facebook friends list as it existed then. In addition, she did not identify in her responses to Defendants' discovery any responsive documents that were no longer in her

---

[2] The Court notes that in the copy of the Requests previously supplied to the Court (ECF No. 74-1), Request No. 25 does not state a specific time frame, but merely references the preceding requests for production. While Defendants state that a time period was defined in their discovery requests, the copy submitted to the Court does not include a time frame.

4

possession, custody or control, including whether they had been disposed of or destroyed. Defendants further assert that Plaintiff's September 18, 2024 document production consciously disregarded the Court's order to produce other relevant social media content that may be material to claims and defenses. Specifically, they assert that the deficiencies in Plaintiff's production include incomplete Instagram posts, no ESI during August 11-19, 2020 and September 16-18, 2020 for either her Facebook or Instagram account, no information about whether Plaintiff posted responsive information on her Snapchat account and no information related to her LinkedIn account.

In turn, Plaintiff states that she notified Defendants on April 17, 2024 that the post had been "removed" and that Defendants already possessed numerous copies of the screenshot of the Privilege Post others circulated on social media and which formed the basis for their disciplinary decisions. Plaintiff claims that the School District was "all but demanding" that she take down the post and having punished her for posting it, they are now seeking to punish her for removing it. Further, she argues that when Defendants deposed her in November 2023, they only asked limited questions about her social media and never followed up with her offer to sit for a second deposition about the deleted post.

Plaintiff asserts that she does not have access to her friends list as of August 2020 and in any event, this information is irrelevant because Defendants reacted to the public posting by other social media users. She also notes that if an employee of Defendants saw the post on her Facebook account and reacted negatively to the point of causing disruption, Defendants would already have access to this information. She notes that Principal Fadick testified at her deposition that there were no complaints made to her from parents or staff and that she "could not speak to any

disruption."[3]

Plaintiff also asserts that after Defendants declined to access her Facebook account directly, she produced screenshots of every post in her Facebook and Instagram Timeline between August 9, 2020 until March 19, 2021, when her employment ended.

### III. Discussion

#### A. Request for Designation of Facts to be Taken as Established

Defendants seek sanctions based on Plaintiff's spoliation of key evidence and her refusal to produce other ESI. They also assert that sanctions are appropriate because Plaintiff has failed to comply with multiple court orders and has "obfuscated discovery."

The authority to issue sanctions for spoliation comes from both the Federal Rules of Civil Procedure and the Court's inherent authority to sanction litigants for misconduct. *Mosaid Techs. Inc. v. Samsung Elecs. Co.,* 348 F. Supp. 2d 332, 335 (D.N.J. 2004). Whether to impose sanctions is within the Court's sound discretion. *Bozic v. City of Washington, Pa.,* 912 F. Supp. 2d 257, 266 (W.D. Pa. 2012).

Rule 37(e) provides the exclusive remedy for spoliation of ESI. *Bistrian v. Levi,* 448 F. Supp. 3d 454, 465 (E.D. Pa. 2020). As the court in *Bistrian* summarized:

> The advisory committee's notes to the 2015 amendment further explain the elements of spoliation of ESI. First, the spoliating party was under a duty to preserve when the loss occurred. Second, the lost ESI was within the scope of the

---

[3] Defendants argue that the analysis of this issue necessarily includes potential disruption. They further contend that the record supports their claim that disruption occurred because the District had to "abruptly look for a substitute teacher during COVID" and when that substitute teacher did not have necessary skill set and resigned, the school had to split Plaintiff's classroom between the other kindergarten teachers. (ECF No. 212 at 3 n.5.) However, these issues arose not because of the Privilege Post, but because the District suspended Plaintiff. Defendants cannot rely on their own actions to demonstrate that Plaintiff's speech caused "disruption." *See Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 992 (3d Cir. 2014) ("It is against this Court's precedent to find against an employee where the disruption was primarily the result, not of the plaintiff's exercise of speech, but of his superiors' attempts to suppress it.")

>duty to preserve. Third, "the information was lost because the party failed to take reasonable steps to preserve" it. Fourth and finally, because ESI "often exists in multiple locations," spoliation occurs only where the information is truly lost and not recoverable elsewhere.

*Id.* (footnotes omitted).

As applicable here, Rule 37(e)(1) of the Federal Rules of Civil Procedure provides that if ESI that should have been preserved is lost because the party failed to take reasonable steps to preserve it, and it cannot be restored or replaced, then the court:

>(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice.

Fed. R. Civ. P. 37(e)(1).

Finally, in determining which sanction to impose, the Third Circuit's three-factor test guides district courts. *Bistrian*, 448 F. Supp. 3d at 465 n.14 (citing *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019)). The "three factors district courts must consider when contemplating Rule 37 sanctions [are]: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *GN Netcom, Inc.*, 930 F.3d at 82.

Defendants claim that Plaintiff failed to preserve ESI, including her Facebook and Instagram posts, together with comments, reactions and re-shares, as well as the identity of her friends and followers at the time of the Privilege Post on both sites. Although requested by Defendants in discovery, none of this ESI was produced. As previously discussed, Defendants claim that they were advised by Plaintiff on the last day of discovery that that the Privilege Post on Facebook was deleted in August 2020. In turn, Plaintiff asserts that Defendants were told in April 2024 that the post had been removed.

As noted in its November 22, 2024 Memorandum Order regarding Defendants' first Motion for Sanctions, this Court could not conclude that Plaintiff acted with improper intent when she deleted the Privilege Post. Therefore, no relief could be afforded under Rule 37(e)(2).

With respect to Rule 37(e)(1), the Court concluded that: (1) the record suggested that Plaintiff anticipated the possibility of litigation and failed to take reasonable steps to preserve relevant ESI; (2) she was under a duty to do so; and (3) Defendants demonstrated that they had been prejudiced as a result because, without access to the ESI associated with the Privilege Post, they could not investigate who may have received it, re-shared it or commented on it and they were unable to access by any other means the information that would have been available. The information was directly relevant to Defendants' assertion that Plaintiff's actions created or could have created disruption and their defense against Plaintiff's claim that it was the issuance of the District's statement that caused disruption. However, because the Court concluded that dismissal of the case, the only relief sought by Defendants, was not warranted, their motion was denied without prejudice to seek other forms of relief.

Defendants also cite violations by Plaintiff of other court orders, including those related to issues with ESI production, as well as other misconduct. (ECF No. 194 at 4 n.3.)

Rule 37(b)(2)(A)(i) provides that in the event a party fails to obey a court order, a court may "direct[] that the matters embraced in the order or other designated facts be taken as established of purposes of the action, as the prevailing party claims."

Defendants request that the following facts be designated as established:

> b. Ms. Deltondo affirmatively and selectively deleted the Privilege Post because information associated with it was unfavorable to Ms. Deltondo, and the spoliated information cannot be recovered or otherwise replaced.
>
> c. Ms. Deltondo's Facebook "friends" and Instagram "followers" (collectively, "Social Media Contacts") included her daughter, District employees,

8

   former students, parents of current and former students, and other community members at the time of making the Privilege Post.

   d. Ms. Deltondo's Social Media Contacts, among others, questioned, objected to, and/or reacted negatively to Ms. Deltondo's endorsement of the language in the Privilege Post.

   e. Ms. Deltondo's Social Media Contacts, among others, screenshot, shared, and/or reported concerns related to the Privilege Post to the District and local news media.

   f. The Privilege Post itself and attendant reactions, shares, and/or reported concerns by Ms. Deltondo's Social Media Contacts caused and thereafter amplified the publicity surrounding the Privilege Post.

(ECF No. 193-1 at 2.)[4]

  The Court finds that the relief sought by Defendants is not warranted. First, as discussed at oral argument, Defendants have not cited any evidence of record from which the Court could designate these facts as established. That Plaintiff deleted the Privilege Post, and that it cannot be recovered, is uncontroverted. As stated in the Court's opinion regarding the first Motion for Sanctions:

> It is undisputed that Plaintiff was in possession of the ESI at issue and deleted her Facebook post immediately upon being notified that she may be subject to discipline. She admits that she did so because of the initiation of disciplinary proceedings. Moreover, according to her Amended Complaint, she felt defamed and humiliated, and believed that she would be terminated. . . For these reasons, the Court finds that Plaintiff failed to preserve ESI.

(ECF No. 176 at 8, 9.) The Court declines to go one step further by designating subpart b. as an established fact. Whether Plaintiff "selectively deleted the Privilege Post because information associated with it was unfavorable to Ms. Deltondo" has not been established by the submission of evidence by Defendants, nor can it be inferred that she did so. Indeed, to designate this statement

---

[4] Although the motion also cites additional facts under subsection (a) of the proposed order, Defendants stated at oral argument that those facts were not for designation by the Court but for certification in connection with civil contempt, as discussed below.

would require the Court to ascertain, without evidence, Ms. Deltondo's state of mind.

Similarly, there is no basis in the record before the Court from which it can ascertain the identity of Plaintiff's social media "friends" and "followers;" whether Plaintiff's social media contacts *among others*, "questioned, objected to, *and/or* reacted negatively" to the Privilege Post; that these reactions were reported to the School District and local news media; or that these reactions caused *and thereafter amplified* the publicity surrounding the Privilege Post. While the Court recognizes that some of these matters cannot be ascertained due to Plaintiff's destruction of ESI, it declines to designate broad and sometimes ambiguous statements as established facts without sufficient evidence.[5] Defendants have provided no authority for their suggestion that, devoid of any evidence, these statements can nonetheless be designated as facts and then read to the jury because Plaintiff deleted the Privilege Post and related information. Simply put, the proposed sanction is not proportional to the prejudice sustained by Defendants as a result of the destruction of the Privilege Post and related information.

Moreover, while undoubtedly there have been multiple issues with Plaintiff's overall production, and lack thereof, of all ESI requested, the relief sought by Defendants does not address Plaintiff's failure to produce all relevant ESI. None of the proposed designated facts relate to overall deficiencies in Plaintiff's document production in any way.

Thus, the Court concludes that Defendants have not supported the relief they seek. As noted in the Court's Memorandum Opinion that denied Defendants' first Motion for Sanctions, Defendants retain the ability to defend their actions and to produce other evidence that Plaintiff's Privilege Post caused disruption, or alternatively, could have caused disruption. Further, the Court cannot unilaterally designate facts of the proposed breadth and ambiguity without support.

---

[5] Presumably, Defendants would possess facts to support subparts e and f.

10

Defendants may not be able to explore certain issues due to Plaintiff's destruction and/or failure to produce documents. But they do not explain how the Court can designate factual statements on pivotal issues in the absence of the same information. The Court is also mindful that it may order measures no greater than necessary to cure the prejudice sustained by Defendants.

With respect to Defendants' complaints about Plaintiff's other discovery violations and failure to comply with Court orders, those that were cited by Defendants were either brought to the Court's attention and ultimately, albeit belatedly, resolved,[6] or not timely brought, or brought at all, to the Court's attention.[7] Likewise, there is no connection between Plaintiff's conduct and the proposed designated facts.

### B. Request for Attorneys' Fees and Costs

Relying upon Rule 37(b)(2)(C), Defendants request reasonable attorneys' fees and costs from Plaintiff and her counsel. Specifically, they request "reasonable attorneys' fees and costs that PPS Defendants have borne in preparing this Motion and other associated time, resources, correspondence, and filings incurred as a result of Ms. Deltondo's spoliation of evidence, violation of the Court's Orders, and for multiplying the proceedings in this case unreasonably and vexatiously." (ECF No. 194 at 11.)

The Court will consider awarding reasonable attorneys' fees and costs with respect to certain matters, including those specifically associated with Defendants' activities related to Plaintiff's spoliation of evidence, their efforts to obtain the Privilege Post and contemporaneous social media information, and their activities associated with Plaintiff's delay and/or failure to

---

[6] This includes the belated declaration about the production of Plaintiff's W-2s and failing to amend their privilege log. Plaintiff also notes that she has produced all postings between August 2020 and March 2021, when her employment ceased.

[7] For example, "repeatedly harassing Defendants through correspondence" as well as doing so during the deposition of Dave Moore.

produce relevant ESI.

The Court declines to award attorneys' fees and costs to Defendants in connection with any other issues that were raised in prior motions to compel. The Court notes that Defendants did not contemporaneously seek fees or do so within a reasonable time thereafter. Similarly, as Defendants were not the prevailing party in their first Motion for Sanctions, they will not be awarded fees or costs associated with that motion. With respect to fees sought because Plaintiff "multiplied the proceedings in this case unreasonably and vexatiously," the Court notes that any number of factors have contributed to delays in this case. Moreover, this request is entirely too ambiguous to be susceptible to any reasonable calculation. Therefore, Defendants will not be awarded any costs associated with Plaintiff "multiplying" these proceedings.

Defendants may submit a petition which, among other necessary matters, sets forth in detail the fees and costs that they assert are associated with these issues, as well as an explanation as to the basis for this association. If they choose to do so, they may also include such fees and expenses associated with their preparation of the present motion, but only as limited to fees related to Plaintiff's spoliation of evidence, their efforts to obtain the Privilege Post and contemporaneous social media information and their activities associated with Plaintiff's delay and/or failure to produce relevant ESI.

### C. Request for Certification to Judge Stickman

Finally, citing Rule 37(b)(2)(A)(vii) and § 636(e)(6)(B)(iii), Defendants request that the undersigned certify the following facts to Judge Stickman for the purposes of requiring Plaintiff and her counsel to appear before Judge Stickman to show cause why they should not be held in civil contempt of Court:

> a. Ms. Deltondo knew, or should have known, relevant information about the Privilege Post and related ESI likely would be requested in litigation. Ms.

>Deltondo had a duty to preserve information related to the Privilege Post and relevant ESI but failed to do so. PPS Defendants have been prejudiced as a result of Ms. Deltondo's actions. Further, the Court ordered Ms. Deltondo to provide responsive information on two occasions, January 18, 2024 and August 19, 2024, but Ms. Deltondo either failed to comply with the orders by the stated deadlines or altogether. This includes Ms. Deltondo's failure to:
>
>>i. Timely comply with the Court's January 18, 2024 Order regarding production of her 2019 and 2021 W-2's.
>
>>iii. Provide all relevant ESI responsive to PPS Defendants' discovery requests for the defined applicable period.

(ECF No. 193-1 at 1-2.)

The Court of Appeals has held that:

>Proof of contempt requires a movant to demonstrate (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order. These elements must be proven by "clear and convincing" evidence, and ambiguities must be resolved in favor of the party charged with contempt.

*F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (citations omitted). "Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (quoting *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3d Cir. 1984)).

Certainly, Plaintiff cannot be held in civil contempt at this juncture for actions she took before this litigation was commenced since there could not be any violation of a court order. With respect to the failure to comply with Court orders issued during this case, as noted above, Plaintiff did, albeit belatedly, comply with orders requiring these actions. Further, Defendants knew long before filing the pending motion that Plaintiff had not complied with these Court orders (information that would only be available to the Court once a party brings it to the Court's

13

attention) but failed to seek sanctions at the time. Their belated effort to do so at this juncture undermines their position. Thus, Defendants have not supported their request to certify the proposed facts to Judge Stickman for the purpose of civil contempt proceedings.[8]

The Court does not take lightly Plaintiff's belated compliance or non-compliance with its orders. Nevertheless, the Supreme Court has observed that "civil contempt is a severe remedy." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019). Defendants have not demonstrated that the certification they seek is warranted in this case.

For all of these reasons, Defendants' Second Motion for Sanctions is GRANTED IN PART AND DENIED IN PART.

Defendants may file a petition in which they seek attorneys' fees no later than November 7, 2025.

SO ORDERED this 16th day of October, 2025.

s/ Patricia L Dodge
PATRICIA L. DODGE
United States Magistrate Judge

---

[8] This decision is not intended to nor should it be construed to make any recommendation or ruling on any contempt proceedings that might be brought before Judge Stickman.